1   SEYFARTH SHAW LLP
    Camille A. Olson (SBN 111919)
2   colson@seyfarth.com
    Richard B. Lapp (SBN 271052)
3   rlapp@seyfarth.com
    D. Joshua Salinas (SBN 282065)
4   jsalinas@seyfarth.com
    2029 Century Park East, Suite 3500
5   Los Angeles, California  90067-3021
    Telephone:    (310) 277-7200
6   Facsimile:    (310) 201-5219

7   SEYFARTH SHAW LLP
    Andrew R. Verriere (SBN 264674)
8   averriere@seyfarth.com
    560 Mission Street, Suite 3100
9   San Francisco, California  94105-2930
    Telephone:    (415) 397-2823
10  Facsimile:    (415) 397-8549

11  Attorneys for Defendant
    CONTINENTAL CASUALTY COMPANY

12

13

14                  UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16

17  MICHAEL MUSA, an individual,              Case No.

18                    Plaintiff,              **NOTICE OF REMOVAL under 28 U.S.C.
                                              §§ 1331, 1332(a), 1441 and 1446**
19        v.
                                              (San Francisco County Superior Court Case No.
20  CONTINENTAL CASUALTY COMPANY and          CGC-16-551778)
    DOES 1 through 20, inclusive,
21                                            Complaint Filed: May 3, 2016
                      Defendants.             Complaint Served: May 6, 2016
22

23  TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

24  CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

25        **PLEASE TAKE NOTICE** that Defendant CONTINENTAL CASUALTY COMPANY

26  ("Defendant" or "CNA") hereby removes the above referenced action from the Superior Court of the

27  State of California for the County of San Francisco, to the United States District Court for the Northern

28  District of California, pursuant to 28 U.S.C. §§ 1441 and 1446, asserting original federal jurisdiction

under 28 U.S.C. § 1332(a), to effect the removal of the above-captioned action, which was commenced in the Superior Court of the State of California in and for the County of San Francisco, and states that the removal is proper for the following reasons.

## I.    JURISDICTION AND VENUE ARE PROPER

1.    This action is a civil action over which this Court has original jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. section 1332(a), and is one that may be removed to this Court by Defendant pursuant to 28 U.S.C. section 1441(b) because it is a civil action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, as set forth below.  28 U.S.C. §§ 1332, 1441(a) and § 1446(b).

2.    Venue is proper in this Court pursuant to 28 U.S.C. sections 84(c)(2), 1391 and 1446.

## II.    INTRADISTRICT ASSIGNMENT

Pursuant to Civil Local Rule 3-2, this matter arises in the City and County of San Francisco. Therefore, assignment to the San Francisco Division is proper.

## III.    PLEADINGS AND TIMELINESS OF REMOVAL

3.    On or about May 3, 2016, Plaintiff Michael Musa ("Plaintiff") filed an original complaint in the Superior Court of the State of California in and for the County of San Francisco, entitled *MICHAEL MUSA, an individual, Plaintiff, vs. CONTINENTAL CASUALTY COMPANY and DOES 1 through 20, inclusive, Defendants*, case number CGC-16-551778 (the "Complaint").

4.    On or about May 6, 2016, Plaintiff served the Summons and Complaint, as well as a Civil Case Cover Sheet, Notice of Case Management Conference, and Alternative Dispute Resolution Program Information Package, on Defendant.  (Declaration of Andrew R. Verriere in Support of Defendant's Notice of Removal ("Verriere Decl."), ¶ 2, Ex. 1).  These are the only documents Plaintiff has served on Defendant.  *Id.*  On June 2, 2016, Defendant timely answered the Complaint.  (Verriere Decl., ¶ 3, Ex. 2).

5.    As of the date of this Notice of Removal, no other parties have been named or validly served with the Summons and Complaint in this matter.  Because the Doe defendants have not yet been served, they need not join or consent to Defendant's Notice of Removal. *Community Bldg. Co.*

2

1    *v. Maryland Casualty Co.*, 8 F.2d 678, 678-79 (9th Cir. 1925) (named defendants not yet served in state

2    court action need not join in the notice of removal); *Salveson v. Western States Bankcard Ass'n*, 731

3    F.2d 1426, 1429 (9th Cir. 1984) (same).

4        *6.*  This Notice of Removal is timely in that it has been filed within thirty (30) days

5    of Defendant's first receipt of the Summons and Complaint on May 6, 2016, and within one year of the

6    filing of the Complaint on May 3, 2016.  *See* 28 U.S.C. § 1446(b).

7    **IV.** **COMPLETE DIVERSITY OF CITIZENSHIP EXISTS BETWEEN THE PARTIES**

8       **A.** **Plaintiff is a Citizen of California**

9        7.  Pursuant to his Complaint, at all relevant times Plaintiff is, and was, a resident of

10   the State of California, County of San Mateo. (Complaint at ¶ 3).  Plaintiff resides in the state of

11   California with the intent to remain there, and is therefore a citizen of California for purposes of the

12   instant jurisdictional analysis. *See, e.g., Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir.

13   2001).

14      **B.** **Defendant is Not A Citizen of California**

15       8.  For diversity purposes, a corporation "shall be deemed a citizen of any State by

16   which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. §

17   1332(c)(1).

18       **1.** **Defendant is Not Incorporated in The State of California**

19       9.  Defendant is a corporation organized and incorporated under the laws of the State

20   of Illinois.  (Declaration of Erin Hitchcock ("Hitchcock Decl.") ¶ 7).

21       **2.** **Defendant Maintains Its Principal Place of Business in Illinois**

22       10.  The United States Supreme Court has held that the "nerve center" test should be

23   used to determine a corporation's "principal place of business."  *Hertz Corp. v. Friend*, 130 S. Ct. 1181,

24   1192 (2010).

25       11.  To this end, the Court reasoned that a corporation's "nerve center" is normally

26   located where the corporation maintains its corporate headquarters and where the "corporation's officers

27   direct, control, and coordinate the corporation's activities."  *Id.*  In other words, a corporation's

28   "principal place of business" can be found where the corporation's "brain" is located.  *Id.*

12.     Courts have considered the following list of non-exclusive factors in determining a corporation's "nerve center":

     a.     where the company's home offices are located

     b.     where the directors and stockholders meet;

     c.     where the corporate officers and executives reside;

     d.     where policy decisions are made;

     e.     where general counsel resides and has its offices; and

     f.     where the administrative and financial offices are located and the records kept.

*See*, *e.g.*, *Unger v. Del E. Webb Corp.*, 233 F. Supp. 713, 716 (N.D. Cal. 1964); *see also State Farm Fire & Cas. Co. v. Byrd*, 710 F. Supp. 1292, 1293 (N.D. Cal. 1989).

13.     The "nerve center" of Defendant CNA is indisputably located in Chicago, Illinois.

     a.     CNA maintains its corporate headquarters in Chicago, Illinois.  CNA's executive and administrative operations are centrally managed from Chicago, Illinois.  (Hitchcock Decl. ¶ 6).

     b.     CNA is not incorporated in California.  CNA is incorporated in the State of Illinois.  (Hitchcock Decl. ¶ 7).

     c.     Meetings of CNA's Board of Directors take place in Illinois, and CNA's financial records are maintained in Illinois.  (Hitchcock Decl. ¶ 8).

     e.     While CNA maintains operational facilities in California, the executive officers of CNA, including the chief executive officer, presidents, chief operating officers, chief financial officer, and general counsel, maintain offices at CNA's headquarters in Chicago, Illinois.  (Hitchcock Decl. ¶ 9).

     f.     From its headquarters in Chicago, Illinois, CNA makes and implements company-wide operating, financial, investment, employee relations, marketing, accounting, income tax, treasury, investor relations, and legal policy decisions.  (Hitchcock Decl. ¶ 10).

C.    **The Parties Are Diverse**

14.    As set forth above, complete diversity of citizenship exists in the instant case because the parties, Plaintiff and Defendant, are citizens of different states.

15.    Does 1 through 20 are wholly fictitious.  The Complaint does not set forth the identity or status of any said fictitious defendants, nor does it set forth any charging allegation against any fictitious defendants.  The citizenship of these Doe defendants is to be disregarded for the purposes of determining diversity jurisdiction, and therefore cannot destroy the diversity of citizenship between the parties in this action.  28 U.S.C. § 1441(a); accord *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (citing 28 U.S.C. § 1441(a)); *see also Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980).

16.    No other party is named or has been validly served as of the date of this Notice of Removal.

V.    **BASED ON PLAINTIFF'S COMPLAINT, THE AMOUNT IN CONTROVERSY EXCEEDS $75,000**

17.    Plaintiff's Complaint is silent as to the total amount of damages claimed.  However, the failure of the Complaint to specify the total amount of damages sought does not deprive this Court of jurisdiction.  *See White v. J.C. Penny Life Ins. Co.*, 861 F. Supp. 25, 26 (S.D. W.Va. 1994) ("The defendant may remove suit to federal court notwithstanding the failure of the plaintiff to plead a specific dollar amount in controversy . . . otherwise . . . any Plaintiff could avoid removal simply by declining . . . to place a specific dollar value upon its claim.").  Defendant needs only to establish by a ***preponderance of evidence*** that Plaintiff's claims exceed the jurisdictional minimum.  *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

18.    The amount in controversy as alleged by Plaintiff in this case exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.  *See* 28 U.S.C. § 1332(a).  In measuring the amount in controversy, the Court must assume the allegations of the Complaint are true and that a jury will return a verdict in favor of Plaintiff in all claims asserted in her complaint.  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 1001 (C.D. Cal. 2002).  Here, Plaintiff

5

1    seeks a recovery of general and special damages, and loss of earnings and benefits. (Complaint at ¶¶ 23-

2    28, 35, Prayer for Relief).   Moreover, Plaintiff also seeks punitive damages and attorneys' fees.

3    (Complaint at ¶¶ 27, 36, Prayer for Relief).

4         19.    Plaintiff was employed as a Claims Consultant, making a base salary of

5    $120,356.67 a year at the time of his termination, plus benefits.  (Hitchcock Decl. ¶ 4).  According to

6    Plaintiff, his employment was terminated on or about May 8, 2014.  (Complaint at ¶ 6).  Although

7    Defendant denies Plaintiff is entitled to recover any such damages, assuming *arguendo*, Plaintiff were to

8    recover back wages from the time of his termination until the present (approximately 25 months), the

9    amount of back pay would equal approximately $250,743, plus benefits.  Moreover, if the case proceeds

10   to trial in May of 2017, a year from when it was filed, and Plaintiff remains unemployed, he will be

11   seeking a total of 36 months of lost wages, which is approximately $361,070 in base salary, plus

12   benefits.

13        20.    In addition, front pay awards in California can span a number of years.  *See Smith*

14   *v. Brown-Forma Distillers Corp.,* 196 Cal. App. 3d 503, 518 (1989) (front pay until mandatory

15   retirement age reached); *Rabaga-Alvarez v. Dart Industries, Inc.*, 55 Cal. App. 3d 91, 92 (1976) (four

16   years); *Drzewiecki v. H&R Block, Inc.*, 24 Cal. App. 3d 695, 705 (1972) (ten years).  Even

17   conservatively estimating that Plaintiff seeks front pay benefits for only the three years after trial, the

18   amount of future wages in controversy in this case would total at least an additional $361,070, plus

19   benefits.  Thus, it may reasonably be estimated that Plaintiff's claims involve claims of back pay and

20   front pay, which alone total an estimated $722,140, plus benefits.

21        21.    Plaintiff also alleges emotional distress and punitive damages.  (Complaint at ¶¶

22   23-24, 36, Prayer for Relief).  These categories of damages must be considered when calculating the

23   amount in controversy.  *See Coleman v. Assurant, Inc.*, 463 F. Supp. 2d 1164, 1168 (D. Nev. 2006) ("It

24   is well established that punitive damages are part of the amount in controversy in a civil action.") (*citing*

25   *Gibson v. Chrysler Corp.*, 261 F. 3d 927, 945 (9th Cir. 2001)); *Richmond v. All State Insurance,* 897 F.

26   Supp. 447, 450 (S.D. Cal. 1995) (general and special damages included in the amount in controversy).

27   Moreover, a defendant may use damage awards in other cases to establish the amount in controversy.

28   *Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal 2002).  Although Defendant denies

DEFENDANT'S NOTICE OF REMOVAL

1    that it should be liable for punitive damages, or any damages whatsoever in this case, for purposes of

2    assessing whether the amount in controversy is satisfied, jury verdicts in various discrimination cases in

3    California reflect that were Plaintiff to prevail at trial, his damages could exceed the $75,000 threshold.

4    *See, e.g., Roby v. McKesson, Corp.*, 47 Cal. 4th 686, 719-720 (2009) (jury award of $15,000,000 in

5    punitive damages in FEHA discrimination and wrongful termination case reduced to $1,905,000); *Smith*

6    *v. Brown-Forman Distillers Corp.*, 196 Cal. App. 3d 503, 516 (1987) ($250,000 award of punitive

7    damages for constructive discharge upheld).  Taking into consideration that Plaintiff seeks many types

8    of damages in excess of his lost earnings, the amount of damages claimed by Plaintiff easily meets the

9    minimum amount in controversy.

10              22.     Plaintiff also seeks to recover attorneys' fees and costs.  (Complaint at ¶ 27,

11   Prayer for Relief).  The attorneys' fee claim is included in determining the amount in controversy when,

12   as in the case at hand, Plaintiff is claiming attorneys' fees pursuant to statute.  *Galt G/S v. JSS*

13   *Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998) ("When an underlying statute authorizes an award of

14   attorneys' fees, . . . such fees may be included in the amount in controversy.").  While Plaintiff's

15   attorney's fees cannot be precisely calculated, it is reasonable to assume that they could exceed a

16   damages award.  *Simmons v. PCR Technology, supra*, 209 F. Supp. 2d at 1035.  Attorneys' fee awards

17   in FEHA cases have been sizeable.  *See, e.g., Beaty v. BET Holdings, Inc.*, 222 F.3d 607 (9th Cir. 2000)

18   (recognizing that award of attorney's fees of $376,520 may be appropriate in FEHA where

19   compensatory damages were only $30,000).  *See also Flannery v. Prentice*, 26 Cal.4th 572 (2001)

20   (affirming award of attorney's fees and costs of $891,042); *Mangold v. California Public Utilities*

21   *Comm'n*, 67 F.3d 1470 (9th Cir. 1995) (affirming $724,380 attorney's fee award in FEHA and ADEA

22   case where plaintiffs' damages awards were significantly less).  Thus, Plaintiff's demand for attorneys'

23   fees increase the amount in controversy.

24              23.     Based upon the pleadings, it does not appear to a "legal certainty that the claim is

25   really for less than" the amount in controversy minimum.  *Spielman v. Genzyme Corp.*, 251 F.3d 1, 5

26   (1st Cir. 2001) (*quoting St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)).

27   Thus, Defendant has carried its burden of demonstrating, by a preponderance of the evidence, that the

28   amount in controversy in this matter exceeds the jurisdictional minimum of $75,000.00.

1

**VI.    NOTICE TO THE COURT AND PARTIES**

2

            24.     Contemporaneously with the filing of this Notice of Removal in the United States

3

District Court for the Northern District of California, written notice of such filing will be given by the

4

undersigned to Plaintiff's counsel of record, and a copy of the Notice of Removal will be filed with the

5

Clerk of the Court for the Superior Court of the County of San Francisco, California.

6

        WHEREFORE, Defendants pray that this civil action be removed from the Superior Court of the

7

State of California, County of San Francisco to the United States District Court for the Northern District

8

of California.

9

10

DATED:  June 3, 2016                    SEYFARTH SHAW LLP

11

12

                                        By:   */s/ Andrew R. Verriere*

13

                                               Camille A. Olson

14

                                               Richard B. Lapp

Andrew R. Verriere

D. Joshua Salinas

15

Attorneys for Defendant

16

CONTINENTAL CASUALTY COMPANY

17

18

19

20

21

22

23

24

25

26

27

28